IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRAIG HENRY,<br><br>Plaintiff,<br><br>v.<br><br>MR. FRED MAUE, Chief Bureau of Health Care Service; JOAN DELIE; DR. HERBICK, Medical Doctor; ROBERT TRETINIK, Health Care Administrator; JOHN DOE; JOHN DOE, Psychiatrist; JOHN DOE, BB-Unit Counselor; JOHN DOE, B-Unit Manager; JANE DOE, Hearing Examiner,<br><br>Defendants. | ) | Civil Action No. 06 - 1439<br><br>Judge David S. Cercone<br>Magistrate Judge Lisa Pupo Lenihan |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I. RECOMMENDATION**

It is respectfully recommended that the Motion for Summary Judgment filed by the Commonwealth Defendants (doc. no. 59) be granted and that the Motion for Summary Judgment filed by Dr. Herbick (doc. no. 65) be granted.

**II. REPORT**

Plaintiff, Craig Henry, is a state prisoner serving a life sentence currently confined at the State Correctional Institution at Fayette, Pennsylvania. He commenced this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, complaining that he has been denied adequate medical care for his Hepatitis C condition in violation of the Eighth Amendment of the United States Constitution. Remaining Defendants include Michael Herbick, M.D; Fred Maue, Chief of the Bureau of Healthcare Services; Joan Delie, Infectious Disease; Robert Tretinik, Healthcare Administrator; and several John Doe Defendants identified as a psychiatrist, a BB Unit Counselor,

a B Unit Manager, a hearing examiner and a member of the program review committee. For the reasons that follow, Defendants are entitled to summary judgment as to Plaintiff's claims.

**A. Standard of Review**

Defendants have filed two motions for summary judgement: The Commonwealth Defendants consisting of Fred Maue, Joan Delie, and Robert Tretinik (doc. no. 59); and the Medical Defendant consisting of Michael Herbick (doc. no. 65).

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. Rule Civ. Proc. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) (party can move for summary judgment by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case."). The moving party bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth ". . . specific facts showing that there is a genuine issue for trial . . ." or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The inquiry, then, involves determining " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that

one party must prevail as a matter of law.' " Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), *cert. denied*, 501 U.S. 1218 (1991) (quoting Anderson, 477 U.S. at 251-52). If a court concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted. Anderson, 477 U.S. at 249-50.

**B. Liability under 42 U.S.C. § 1983**

In order to assert liability pursuant to 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).[1]

Plaintiff takes issue with the alleged lack of adequate medical treatment for his Hepatitis C condition. Plaintiff's claim concerning his medical treatment invokes the protections of the Eighth Amendment. In order to make out a *prima facie* case that a prison official's actions violate the Eighth Amendment's prohibition against cruel and unusual punishment, an inmate must show two elements. First, a prisoner must show that the condition, either alone or in combination with other conditions, deprived him of "the minimal civilized measure of life's necessities," or at least a "single, identifiable human need." Wilson v. Seiter, 501 U.S. 294 (1991) (citing Rhodes v.

---

1. In addition, this Court will review only those claims that occurred within the two year limitations period for civil rights claims in Pennsylvania. *See* Wilson v. Garcia, 471 U.S. 261, 272-76 (1985) (42 U.S.C. § 1983); 42 Pa. Cons. Stat. § 5524. Plaintiff's Complaint is signed and dated October 17, 2006. Due to the two-year limitations period, Plaintiff cannot impose liability against Defendants under 42 U.S.C. § 1983 for events that occurred prior to October 17, 2004.

Chapman, 452 U.S. 337, 347 (1981)).  Second, an inmate must demonstrate deliberate indifference to prison conditions on the part of prison officials.  Farmer v. Brennan, 511 U.S. 825; Wilson, 501 U.S. at 297; Rhodes, 452 U.S. at 347.

To state an Eighth Amendment violation in the context of medical treatment, an inmate must prove two elements:  1) plaintiff was suffering from a "serious medical need," and 2) prison officials were deliberately indifferent to the serious medical need.  Gamble v. Estelle, 439 U.S. 897 (1978).  The first showing requires the court to objectively determine whether the medical need was "sufficiently serious."  A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.  Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988).

The second prong requires a court subjectively to determine whether the officials acted with a sufficiently culpable state of mind.  Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury.  Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993).

Here, Plaintiff claims that he suffers from Hepatitis C.  Thus, Plaintiff has alleged the existence of a serious medical need.  Plaintiff claims that Defendants acted with deliberate indifference because they denied medical treatment, *i.e.*, Interferon and other treatments provided

under the DOC protocol for treating Hepatitis C based on a non-medical reason -- cost. This allegation is belied by the record.[2]

The "deliberate indifference" standard for purposes of liability under section 1983 is a stringent standard of fault requiring proof that a defendant disregarded a known or obvious consequence of his action. Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 410 (1997). The defendant must be both aware of facts from which the inference could be drawn that a substantial harm exists and he must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). An official is not deliberately indifferent if "he fails to alleviate a significant risk that he should have identified." *Id*. Moreover, deliberate indifference to a serious medical need of a prisoner is distinguishable from a negligent diagnosis or treatment of a medical condition; only the former conduct violates the Eighth Amendment. Medical malpractice may give rise to a tort claim in state court but does not necessarily rise to the level of a federal constitutional violation. Kost v. Kozakiewicz, 1 F.3d 176, 185 (3d Cir. 1993); Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993).

The Supreme Court explained the difference between negligence and constitutional claims in Estelle v. Gamble, 429 U.S. 97, 104 (1978). In that case, the prisoner, Gamble, was injured when a bale of cotton fell on him while he was unloading a truck. He went to the unit hospital where a medical assistant checked him for a hernia and sent him back to his cell. He returned to the hospital where he was given pain pills by an inmate nurse and then was examined by a doctor. The following day, his injury was diagnosed as a lower back strain; he was prescribed a pain reliever and

---

2. Defendant Herbick argues that Plaintiff failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). The Court finds that Plaintiff did exhaust his available administrative remedies and therefore, his claim is ripe for review.

a muscle relaxant. Over the course of several weeks, Gamble was seen by several doctors who prescribed various pain relievers and provided him with medical work excuses. Ultimately, despite his protests that his back hurt as much as it had the first day, medical staff certified Gamble to be capable of light work. During the next two months, Gamble received a urinalysis, blood test, blood pressure measurement, and pain and blood pressure medication. Subsequently, a medical assistant examined Gamble and ordered him hospitalized for treatment of irregular cardiac rhythm.

The Supreme Court held that Gamble's allegations failed to state a claim upon which relief could be granted against the defendant, both in his capacity as a treating physician and as the medical director of the Corrections Department.

> Gamble was seen by medical personnel on 17 occasions spanning a 3-month period . . .. They treated his back injury, high blood pressure, and heart problems. Gamble has disclaimed any objection to the treatment provided for his high blood pressure and his heart problem; his complaint is "based solely on the lack of diagnosis and inadequate treatment of his back injury." The doctors diagnosed his injury as a lower back strain and treated it with bed rest, muscle relaxants and pain relievers. Respondent contends that more should have been done by way of diagnosis and treatment, and suggests a number of options that were not pursued. The Court of Appeals agreed, stating: "Certainly an x-ray of (Gamble's) lower back might have been in order and other tests conducted that would have led to appropriate diagnosis and treatment for the daily pain and suffering he was experiencing." But the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court under the Texas Tort Claims Act.

Gamble, 427 U.S. at 107 (internal citations omitted) (emphasis added).

Like the prisoner in Gamble, Plaintiff at bar has failed to demonstrate that he suffered a constitutional violation, a prerequisite for recovery under 42 U.S.C. § 1983. Plaintiff's medical

records indicate that he received extensive medical treatment for his Hepatitis C condition. Specifically, the record indicates that, from the year 2000 through the present, Plaintiff has received regular testing to assess his viral load, blood count, and liver enzyme levels (doc. nos. 59-2 and 59-3). From January, 2000 through May, 2007, Plaintiff was treated by a total of 46 medical professionals, including 22 physicians, 12 physicians' assistants, and 12 nurses (doc. no. 59-6).

Most importantly, the record shows that Plaintiff was provided with two courses of treatment for his Hepatitis C. Plaintiff first was treated with Interferon for six months from June, 2000, through January 2, 2001 (doc. no. 65-7, p. 37). His treatment was discontinued because it was determined that it had failed because his viral load remained at 12,000 (id.). At that time, Plaintiff was deemed to be a "non-responder" in terms of the treatment (id.). A "non-responder" is a patient who has undergone a period of treatment utilizing one or more Hepatitis C medications and who has not experienced a "clearance" of Hepatitis C from his system (doc. no. 65-7, p. 36, ¶7). "Clearance" is when the patient's viral load diminishes to a level of non-detectible by the testing methodology (id.). Plaintiff's viral load never reached or approached the non-detectible level. Pursuant to the Hepatitis C treatment protocol, if a patient's viral load has not been reduced to the non-detectible level within either three or six months of treatment, the treatment is stopped; thereafter, the patient's clinical condition is monitored and the viral load re-tested after one year. (doc. no. 65-7, p. 37, ¶8).

Since Plaintiff's initial treatment in 2000-2001, a new Hepatitis C medication became available - pegylated Interferon, also known as Pegasus (doc. no. 65-7, p. 37, ¶11). Plaintiff was treated with a combination of Pegasys and Ribavirin for six (6) months, from March 17, 2003 through September 17, 2003 (doc. no. 65-7, p. 37, ¶12). When Plaintiff's viral load was tested in

October, 2003, it was determined to be 312,000 and the course of the new treatment was deemed to have been a failure (id.).

Sometime in 2004-2005, the Hepatitis C treatment protocol was modified to include a liver biopsy (doc. no. 65-7, p. 37, ¶13). If the biopsy shows evidence of cirrhosis or serious liver damage, re-treatment can be provided (id.). Where the biopsy does not show evidence of cirrhosis or any serious liver damage, then their condition continues to be monitored and another biopsy is obtained after five (5) years (id.).

A liver biopsy was obtained from Plaintiff on December 5, 2005 and the report showed the absence of any indication of cirrhosis or liver damage (doc. no. 65-7, p. 38, ¶14). The report reflected a Scheuer Score of One (1), which, under the DOC treatment protocol, indicates a non-rapidly-progressing liver condition that did not warrant treatment at that time. In the event that Plaintiff's liver disease were to progress beyond the "non-rapidly-progressing" stage, the only treatments currently available are those that already failed (doc. no. 65-7, p. 38, ¶15).

There is no "cure" for Hepatitis C and in most cases, once contracted, a patient will remain Hepatitis C positive for the rest of their lives (doc. no. 65-7, p. 38, ¶17). Even where a patient's viral load has been successfully reduced, there is the potential that over time it again will increase (id.). For the majority of persons with chronic Hepatitis C infection, the condition is not life-threatening (id.).

While an intentional refusal to provide <u>any</u> medical treatment to an inmate suffering from a serious medical need manifests deliberate indifference and is actionable under the Eighth Amendment, the Eighth Amendment does not require that a prisoner receive every medical treatment

that he requests or that is available elsewhere.[3]  A disagreement as to the appropriate choice of medical treatment does not give rise to a constitutional violation because the "right to be free from cruel and unusual punishment does not include the right to the treatment of one's choice." Layne v. Vinzant, 657 F.2d 468, 473 (1st Cir. 1981).  Mere disagreements over medical judgment do not state Eighth Amendment claims as there are typically several acceptable ways to treat an illness.  White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990) (citations omitted).  *Accord* Young v. Quinlan, 960 F.2d 351, 358 n.18 (3d Cir. 1992) (an inmate's disagreement with prison personnel over the exercise of medical judgment does not state claim for relief under section 1983).

To survive Defendants' motions for summary judgment, Plaintiff is required to point to some evidence to show that Defendants knew or were aware of a substantial risk of serious harm to Plaintiff based on their treatment of his Hepatitis C.  Singletary v. Pennsylvania Dept. of Corrections, 266 F.3d 186, 192 n.2 (3d Cir. 2001)).  Specifically, there is no record evidence that suggests that any Defendant knew that Plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate. Moreover, while Plaintiff wants additional treatment, he has failed to demonstrate that he suffered any harm as a result of Defendants' actions.  Nor is there any evidence of the issue of cost being a factor in the treatment of Plaintiff's condition.  Thus, all Defendants are entitled to summary judgment as to Plaintiff's

---

3. *See, e.g.*, Dias v. Vose, 960 F.2d 143 (1st Cir. 1991); United States v. DeCologero, 821 F.2d 39, 42 (1st Cir. 1987) ("though it is plain that an inmate deserves adequate medical care, he cannot insist that his institutional host provide him with the most sophisticated care money can buy"); Ferranti v. Moran, 618 F.2d 888, 891 (1st Cir. 1980) (a dispute over the exercise of professional medical judgment may present a colorable claim of negligence, but it falls short of alleging a constitutional violation); Layne v. Vinzant, 657 F.2d 468, 474 (1st Cir. 1981) (where the dispute is over the adequacy of the medical treatment, federal courts should be reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law).

claims alleging inadequate medical treatment. *Accord* Monmouth, 834 F.2d at 346 (deliberate indifference may be shown only where prison officials have actual knowledge of the need for treatment, yet intentionally refuse to provide any appropriate care).

## III. CONCLUSION

It is respectfully recommended that the Motion for Summary Judgment filed by the Commonwealth Defendants (doc. no. 59) be granted and that the Motion for Summary Judgment filed by Dr. Herbick (doc. no. 65) be granted.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

/s/ Lisa Pupo Lenihan
Lisa Pupo Lenihan
United States Magistrate Judge

Dated: November 24, 2008

cc: The Honorable David S. Cercone
United States District Judge

Craig Henry, AP-7447
SCI Fayette
P.O. Box 9999
LaBelle, PA 15450-0999